————o————

JONATHAN SHARP, *et al.*, Respondents, *vs.* CHLOE BERRY, *et al.*, Appellants.

60 575
153 605

1. *Equity—Resulting trust—What proof necessary to authorize decree of.*—To warrant the destruction of a legal title, by decree of a resulting trust, the proof should be of the most conclusive character.

### *Appeal from Livingston Circuit Court.*

*C. A. DeLieuw, with J. D. Strong*, for Appellants, cited Forester vs. Scoville, 51 Mo., 238 ; Johnson vs. Quarles, 46 Mo., 423; Lead. Cas. Eq., Hare & Wal. Notes, pp. 272, 276, 280, 283 ; Hill Tr. pp. 148, 149, 151; Sugd. Vend., pp. 391, 395, of vol. 11; Spoor vs. Wells, 3 Barb. Ch. 99 and 194 ; 1 Hoffm. Chy., 97 ; 10 Paige Chy., 182.

*H. M. Pollard*, for Respondents.

When Berry bought these lots with his and Sharp's money and took the conveyance in his own name, he held the undivided half in trust for Sharp. (1 Perry Tr., § 126 ; Payne vs. Chouteau, 14 Mo., 580; Valle vs. Bryan, 19 Mo., 423 ; Rankin vs. Harper, 23 Mo., 579 ; Baumgartner vs. Guessfeld, 38 Mo., 36 ; Hill Tr., 92 and notes; Jackson vs. Sternberg, 1 John. Cas., 153.)

A resulting or implied trust may be proved by parol, even against the face of the deed, or the sworn answer of the trustee, and it need not be in writing. (Boyd vs. McLeod, 1 John. Ch., 245 ; Johnson vs. Quarles, 46 Mo., 423 ; Fausley vs. Jones, 7 Ind., 277 ; 1 Perry Tr., §§ 137–8, and cases there cited ; Faris vs. Dunn, 7 Bugh., 276 ; Caldwell vs. Caldwell, 7 Bugh.,

515 ; Letcher vs. Letcher, 4 I. I. Wranch, 590 ; Larkins vs. Rhodes, 5 Post [Ind.], 196 ; Larkins vs. Rhodes, 23 Ind., 157.)

NAPTON, Judge, delivered the opinion of the court.

The plaintiffs are heirs of Martin Sharp, and the defendants the heirs of Benj. Berry. The suit was brought in 1871.

The petition alleges that Sharp died in January, 1871, and Berry died in 1865 ; that Berry, on the 5th of November, 1856, by a purchase at sheriff's sale and by deed from said sheriff to himself, acquired the legal title to lots 6 and 7 in Block 51 in the town of Chillicothe, Livingston county, which deed is duly recorded ; that at the time said deed was made, Martin Sharp furnished said Berry one-half of the purchase money, upon the understanding that said deed was to be made to said Berry & Sharp jointly ; that said deed was to Berry, solely, through mistake or omission of said Berry ; that said mistake or omission was not discovered till after the death of Berry.

It is further alleged, that said Berry also acquired the sole title to lot 3, block 51, by deed from Abithal Wallace, Adm'r of one Bell, dated 13th May, 1857, and by subsequent deed from Abel Love and wife, dated July 3d, 1859, both duly recorded, and said Sharp furnished one-half of the purchase money for this lot, and that the deed to Berry was by mistake or omission.

The petition therefore asks that the defendants, heirs of Berry, be divested of title to the undivided half of these lots, and that the same be vested in plaintiffs the heirs of Sharp.

The answer simply denies these allegations.

After hearing the testimony, the Circuit Court entered a judgment in favor of the plaintiffs. The testimony is preserved in the bill of exceptions, and the propriety of the decree based on it is the only question we are called upon to review.

It would serve no useful purpose to recite the evidence at large, which is voluminous, and is chiefly made up of state-

ments made to the witnesses by the original parties, long since dead, and which of course presents great contradictions. It may be observed, however, that the witnesses seem to be candid and truthful and, no doubt, correctly state the facts they testify to. The difficulty is in the interpretation of the facts.

Some of the facts, however, are clear and beyond controversy. Sharp was the father-in-law of Berry, and they both moved from Illinois to Chillicothe in 1865, and lived in the same house, and Sharp being about 70 years old and Berry somewhat younger, though in bad health, managed the pecuniary affairs of Sharp as well as his own. Mrs. Berry, a material witness for plaintiffs, who was the daughter of Sharp, testifies to this. That Sharp and Berry bought some lots and other land adjoining Chillicothe in common, is conceded, and that Berry owned a lot, and perhaps other land distinct from any interest of Sharp, is conceded.

The testimony of Mrs. Berry is very clear and exact. She states that a few weeks before the death of her husband, he called her attention and that of her sister and father to the fact that all the lots he (Berry) had purchased in Chillicothe, except one (naming it) had been bought in conjunction with her father, and that he furnished half of the money to buy them.

Her sister, Charlotte, is equally confident. She was 59 years old, and states that she had charge of her father's money, and that he came to her after the purchase of said lots and called for his money and counted it, and paid one-half to Berry. She does not say, however, that the money was used to pay for the lots in dispute—a matter, which only tends to confirm the truth of what she does state.

The evidence seems to be about equally balanced as to the admissions of Berry and of Sharp, several witnesses stating that Berry always admitted Sharp and himself to be joint owners, and as many others declaring that Sharp stated that Benj. Berry was the owner of the three lots in dispute. No great importance is to be attached to such evidence—it being

very natural for witnesses to interpret such declarations according to their bias.

The most important testimony in the case is that of Hayes and Edgerton. Hayes was the owner of the lots six and seven, and it was upon a sheriff's sale of Hayes' interest that Berry became the purchaser. After this sale Hayes rented the premises, and the following agreement was signed:

" Article of agreement made and entered into this the 1st day of April, 1856, between Benj. Berry and Martin Sharp of the first part, and Robert Hayes of the second part, witnesseth: that the parties of the first part have this day rented their premises known as lots 6 and 7 in block 51, town of Chillicothe, Livingston county, Missouri, to the party of the second part, who hereby agrees to pay the parties of the first part ten dollars per month; which rent is to be paid monthly in advance.

" The party of the second part also binds himself, &c.

" Given under our hands and seals, this 1st day of April, 1856.

" Benj. Berry,    [Seal.]<br>
his<br>
" Martin X Sharp,  [Seal.]<br>
mark.<br>
" Robert Hayes,   [Seal.] "

There was some dispute as to Berry's signature; but it is clear that Berry signed his name and Sharp's to this contract.

Edgerton was the administrator of Berry and it appears that he paid taxes on lots 3, 6, & 7 in block 51, seeing that the legal title, according to the deeds on record, clearly established the title in Berry. This was six years after Berry's death, before the death of Sharp.

There can be scarcely a doubt left on the mind that Sharp and Berry bought these three lots in conjunction. The lease to Hayes is conclusive as to two of the lots. There can be no doubt that Berry signed this lease and wrote Sharp's name to it; and it is impossible to explain such an act, except on the assumption that Sharp was joint owner. Still, it is remark-

able that Sharp survived Berry for six years and made no claim, and if the title had been conveyed to innocent purchasers, in conformity to the title as it stood on the record, we should decline to disturb it.   For, though it is clear that Sharp paid a part of the purchase money, the relation between him and Berry may have induced him to advance the amount as a gift or as a loan, and his silence after Berry's death would seem to confirm this view.   But, as the case stands, we cannot disturb the decree, although fully conceding that nothing short of the most conclusive proof would justify a court in enforcing such resulting trusts.

The authorities on the general question are referred to in the briefs.    Judgment affirmed; the other judges concur.